# EXHIBIT A

[REDACTED]

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE RAMISHVILI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TAMAR TORADZE,<br><br>　　　　　Defendant. | Case No. 1:21-cv-274-GTS-TWD<br><br>Chief Judge Glenn T. Suddaby<br>Magistrate Judge Therese W. Dancks<br><br>**REDACTED** |

### AFFIDAVIT OF GEORGE RAMISHVILI

I, George Ramishvili, hereby affirm the following under penalty of perjury:

1.　　I am a citizen of the Democratic country of Georgia, dedicated husband, and the father of four young children. I am also the founder and Chairman of Silk Road Group Holding ("Silk Road Group"), the company I found over twenty years ago. After decades of hard work and dedication, today Silk Road Group is one of the leading private investment groups in Georgia providing employment to over 6,000 Georgians and supporting countless philanthropic initiatives in the country, including Wounded Worrier Project, music academy for regional youth, and National Geographic Georgia, which I'm very proud of. It is import for me to emphasize that I currently hold a 61.9% stake in Silk Road Group, which accounts for a vast majority of my income. Accordingly, my name, decision-making ability and business reputation has a direct impact on Silk Road Group and its business operations and, of course, its employees. Silk Road Group owns a 61.76% stake in the holding in Georgia (the "Holding") which owns the largest telecommunication

company, Silknet JSC ("Silknet"), in Georgia, as well as prime real estate assets in Tbilisi, the capital of Georgia and Adjara seaside region of Georgia. Taking into account that we have other investors in the Holding, my stake in the Holding is 38.23%.

2. Starting on June 4, 2020, Defendant Tamar Toradze ("Defendant"), in coordination with her Georgian contacts, unveiled her highly disturbing and entirely false character assassination campaign against me, which has already resulted in substantial monetary and emotional damages for me, my family, and my company, Silk Road Group. Defendant's allegations (a) that I was directly involved in the tragic murder of her family in March 1992 in the country of Georgia and (b) that I threatened to hire someone to kill her if she mentioned my name in connection with her family's murder are not only fabrications, but the nature of the allegations are designed to be so explosive to make *any* person who hears it alarmed and prompt them to question my character and/or immediately distance themselves from me, including from doing business with me and my company. This is the exact result Defendant and the individuals assisting her in Georgia desire to achieve as there can be no other reason or explanation for Defendant's actions against someone she has *never* known or met.

3. It is true that what happened to Defendant's family is devastating and I express my deepest sympathies to her; however, it is also true that I have nothing to do with Defendant's tragic events. As my counsel has previously represented, and to be very clear, I have *never* communicated with Defendant nor her family members and I have *never* met Defendant nor her family members in my entire life. It is unfortunate that Defendant has chosen to weaponize her own family tragedy by becoming the key figure in a well-orchestrated and calculated character assassination campaign through which she has

circulated false, sensational, and disturbing allegations against me on various media platforms on multiple occasions including, but not limited to, the following dates: June 11, 2020; June 30, 2020; July 5, 2020; July 14, 2020; and December 26, 2020. These outrageous statements and Defendant's deliberate actions geared towards causing maximum reputational damage to both me and my business, as well as her continuing threats directed at me, my wife and my family, have left me with no other choice but to defend my and my family's name and the reputation of my business in this Court. Throughout her smear campaign against me and despite the instant litigation, Defendant has persisted, and in fact has become emboldened, to make these false, sensational, and defamatory statements on social media as well as through her personal letters addressed to high level politicians in the United States and in Georgia. *See, e.g.*, Commersant, *Tamar Toradze's open letter to Kelly Degnan*, available at https://commersant.ge/en/post/tamar-toradzes-open-letter-to-kelly-degnan (last visited May 16, 2021) (reiterating her defamatory allegations in an "open letter" to the US Ambassador to Georgia). Defendant has even gone as far as to make these statements *and new* allegations to this Court. *See, e.g.*, Letter (ECF No. 13) 1-2.

4. It is evident to me that the Defendant has chosen a convenient time to unveil her smear campaign against me. Recently, the 1992 murder has become the subject of a heated politically-polarizing debate between the two political parties in Georgia which has captured the Georgian public's attention. Defendant's plan appears to have been to attach my name to this ongoing political standoff by implicating me in a high-profile murder of her family members. Defendant, including her Georgian contacts, knew that attaching my name to the murder would undoubtedly cause devastating and direct reputational and

monetary damages first to me personally and then to Silk Road Group, as I am the founder and the largest shareholder of Silk Road Group. Defendant's plan worked: following the widespread and well calculated distribution through the media of Defendant's defamatory statements, Silk Road Group's major clients have been made aware of her sensational and baseless allegations causing severe damage to both me and my company's reputation in the community – both in Georgia and internationally. ███████████████████

███████████████████████████████████████████████

███████████████████████████████████

5. Because Defendant's defamatory statements continue to appear in the Georgian media and on her social media platform, I am very concerned that it is only a matter of time for other inquiries about this matter to come from additional clients and especially from our local and international investors. Accordingly, given the persistency and egregious nature of Defendant's statements, I asked Silk Road Group to suspend activities related to a number of highly lucrative investment opportunities for the company in order to minimize further media attention to myself and Silk Road Group.

6. ███████████████████████████████████████
█████████████ █████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

7.      In addition to the above lost investment opportunity in Paragraph 6, I have asked Silk Road Group to suspend two additional investment opportunities involving commercial and residential projects in Georgia, both of which have caused significant investment losses to the company and to me personally in 2020.

8.      Aside from the significant monetary damages caused to my business as a result of the Defendant's character assassination campaign against me and my family, I was advised to retain Project Associates – a strategic and public relations advisory firm – to mitigate the damage caused to my reputation. Project Associates and I expended significant time and resources to address Defendant's defamatory statements and to prevent further damage to me personally and to my company. Project Associates has spent six hours per week starting from June 2020 until February 2021 developing advice on public relations issues and strategy. To date, their services alone have resulted in me personally expending

approximately $110,000.  I continue to pay this organization monthly as long as Defendant continues her character assassination campaign of spreading false and defamatory statements about me in the media.

9.     In addition to retaining Project Associates to help me mitigate damages caused by Defendant's false statements in the media, I have retained a U.S. based law firm Reed Smith LLP ("Reed Smith") to initiate the instant legal action against Defendant for defamation *per se* and, in the alternative, defamation causes of action, arising from her defamatory statements.  My retention of Reed Smith was a necessary expense to mitigate damage caused by Defendant's defamatory statements by protecting my and my company's reputation.  To date, their services have resulted in me personally expending $81,293.  Again, I continue to pay this organization monthly as long as Defendant continues her character assassination campaign of spreading false and defamatory statements about me in the media.

10.    In sum, and as set forth above, thus far I personally suffered monetary losses in investment opportunities in the amount of [REDACTED] as a direct result of Defendant's defamatory allegations and $191,293 in expenses to mitigate the damage caused by such allegations.

11.    While the monetary damages by Defendant's false, misleading and defamatory statements are substantial, the cost of emotional distress they continue to cause to both me and my family is unquantifiable.  Since my elderly parents became aware of Defendant's statements, they became extremely distressed.  As Defendant's smear campaign keeps on playing out on the public stage in Georgia, I have reasons to worry about my parent's health.  Given the recent and increasingly violent nature of Defendant's allegations

circulated through the Georgian media and her personal social media posts, which already put an individual mentioned in her social media post in immediate danger of being potentially killed by multiple gunshots, I am extremely concerned for both my and my family's safety. I am also deeply concerned that Defendant's outlandish and simply fabricated statements carried out through a carefully coordinated character assassination campaign, which involves the participation of several media outlets and the individuals associated with the media industry in Georgia, will result in me being the subject of the Georgian Chief Prosecutor's Office's reinvestigation into Defendant's family's murder. To me and my family, being associated with this horrific incident – which I was in no way, shape or form involved in – only further deepens the emotional distress we have been living under for the last ten months.

12. The above is the reason why I felt it was important for me to personally address the Court directly through this affidavit. Just like any other citizen of the world, in Georgia or in the United States of America, I too deserve no less than fair and equal justice under law where the smear campaign of lies perpetrated by Defendant in coordination with her Georgian contacts are not permitted to destroy my and my family's livelihood and the successful business I worked so hard for decades to build.

I, George Ramishvili, do hereby certify under penalty of perjury under the law of the United States of America, pursuant to 28 U.S.C. §1746(1), that the above statements are true and accurate to the best of my knowledge and belief.

Dated:  May 20, 2021

_____
George Ramishvili